File Name: 05a0914n.06
Filed: November 18, 2005
NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 04-2227

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JAVON HILL,

    Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
EASTERN DISTRICT OF
MICHIGAN

_____/

BEFORE:    MARTIN, NELSON, and ROGERS, Circuit Judges.

    BOYCE F. MARTIN, JR., Circuit Judge. Javon Hill seeks review of his conviction and sentence for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g). For the reasons discussed below, we VACATE Hill's sentence and REMAND the case for resentencing consistent with *United States v. Booker*, 125 S. Ct. 738 (2005). As to the error claimed by Hill regarding his conviction, we AFFIRM the district court's judgment.

I.

    On February 22, 2004, Sergeant Steven Crutchfield of the Detroit Police Department responded to a 911 telephone call requesting police assistance regarding a taxi cab fare dispute between a cab driver and his passenger. When Sergeant Crutchfield arrived at the scene he observed

a cab driver arguing with an African-American male whom he later identified as Hill.  As Sergeant Crutchfield exited his vehicle he requested that Hill come over to his patrol car. Hill did not comply with this request and instead ran away from the scene. Sergeant Crutchfield then pursued Hill in his patrol car, used his police dispatch radio to request further police assistance, and provided a description of Hill along with Hill's direction of flight.

Upon hearing Sergeant Crutchfield's broadcast, Officers Melvin Williams and Bryan McClarty arrived in the area in their patrol car and spotted Hill walking quickly down the street. When the two officers stopped the patrol car, Hill ran away again. Officer Williams chased Hill on foot.  During this chase Officer Williams observed Hill remove a blue steel automatic handgun from his waistband and toss it to the ground. Officer Williams continued to chase Hill until Hill ran through a thick brush area which Officer Williams decided was too dangerous to enter. Officer Williams then broadcast another request for police assistance over dispatch radio and gave another description of Hill along with the information that Hill had been in possession of a firearm. Officers Williams and McClarty then searched for the handgun which was eventually recovered by Officer McClarty.

Officer Emmett Quaine was also in the area and after hearing Sergeant Crutchfield's broadcast, drove to the area where Officer Quaine believed Hill to be running.  Officer Quaine found Hill and was able to detain and ultimately arrest Hill. No further firearms were found on Hill at the time of his arrest.

Following his arrest, Hill was indicted for possession of a firearm by felon in violation of 18 U.S.C. § 922(g).  On several occasions prior to trial, Hill's defense counsel requested that the

government turn over to the defense "any 911 tape made from the cab company or cab driver to Sgt. Crutchfield." The prosecutor assigned to Hill's case spoke with Sergeant Crutchfield about obtaining the 911 tape. Sergeant Crutchfield incorrectly informed the prosecutor that there was no 911 tape as Sergeant Crutchfield had been summoned to the situation by the cab driver. Thus the 911 tape was never turned over to the defense and the case proceeded to trial on May 25, 2004.

At trial, Sergeant Crutchfield testified that he had been summoned to the location of the cab fare dispute not by the cab driver but by a 911 dispatch call. Sergeant Crutchfield confirmed that this 911 call would have been recorded at the time it was received by the police department. Subsequently it was concluded that the recording of the 911 call had been destroyed pursuant to the police department's policy of destroying recordings of 911 calls after ninety days. The defense then filed a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 based on the government's failure to produce the recording of the 911 call when the defense requested. The district court denied this motion and Hill was subsequently convicted of being a felon in possession of a firearm.

After the trial, the defense filed a motion for a new trial under Federal Rule of Criminal Procedure 33 on the grounds that the government had violated Hill's due process rights by failing to preserve the recording of the 911 telephone call. The district court ultimately denied this motion on the grounds that Hill failed to show that the government acted in bad faith and that the information potentially contained on the recording was not material to Hill's guilt for felony possession of a firearm. The district court held a sentencing hearing at which Hill was ultimately sentenced to sixty-three months' imprisonment followed by three years of supervised release.

Although Hill was sentenced prior to the Supreme Court's decision in *Booker*, Hill nonetheless preserved his right to challenge his sentence under *Booker* by raising a Sixth Amendment claim at sentencing.

## II.

Hill alleges that he is entitled to a new trial based on the government's destruction of the 911 recording. Under Federal Rule of Criminal Procedure 33, the district court may grant a new trial on the motion of a defendant only if the interest of justice so requires. The decision to grant or deny a defendant's motion for a new trial rests within the district court's discretion and this Court will not reverse a district court's ruling on a motion for new trial absent a clear abuse of discretion. *United States v. Seago*, 930 F.2d 482 (6th Cir. 1991). Motions for a new trial are generally disfavored and are granted only with caution. *Id.* (citing *United States v. O'Dell*, 805 F.2d 637, 640 (6th Cir. 1986)).

Hill alleges that the district court erred in denying his motion for a new trial on the grounds that the government's failure to preserve the recording of the 911 call violated his due process right to a fair trial. In *Arizona v. Youngblood*, 488 U.S. 51 (1988), and *California v. Trombetta*, 467 U.S. 479 (1984), the Supreme Court made clear that the government is not required to preserve all evidence which could plausibly be exculpatory during a defendant's trial or sentencing. *See Youngblood*, 488 U.S. at 58 (noting that the due process clause does not impose "an undifferentiated and absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution"). Rather, the government violates a defendant's due process rights only where the government acts in bad faith in destroying "potentially useful" evidence.

*Youngblood*, 488 U.S. at 58 ("We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitutes a denial of due process of law."). The Supreme Court has defined "potentially useful" evidence as evidence "which might have exonerated the defendant." *Id*. at 57. Moreover, in order to establish bad faith a defendant must show that the government destroyed evidence (1) whose exculpatory significance was "apparent before" the evidence's destruction; and (2) the defendant remains unable to "obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 489.

In this case, as the district court noted in its opinion, it is highly unlikely that the recording of the initial 911 telephone call meets even the minimal qualifications of potentially useful evidence. The defense argues that the tape may have been useful in several ways: (1) it may have permitted the defense to identify and locate the taxi cab driver, who then could have testified that Hill was not the individual with whom the taxi cab driver had a fare dispute; and (2) it could have been used to impeach Sergeant Crumpfield's credibility. Hill's arrest and his charge for felony possession of a firearm, however, were wholly unrelated to the taxi cab fare dispute. Even if the taxi cab driver could be located as a result of the 911 recording, and testified that Hill was not involved in the fare dispute, Hill's guilt for felony possession of a firearm would be not be impugned. The testimony of the police officers would still indicate that Hill was observed fleeing the location and that Hill was seen with a firearm in his possession. Similarly attacking Sergeant Crutchfield's credibility would have done little to weaken the government's case against Hill. For it was Officer Williams, not Sergeant Crutchfield, who testified to seeing Hill in possession of a firearm. Thus, the elements of the charge against Hill would still be proven even if the defense had access to the 911 recording and

the recording contained exculpatory evidence.  Therefore, Hill's due process rights were not violated in the case because the government's failure to preserve the 911 recording did not prevent the defense from accessing potentially useful evidence.

Additionally, even assuming arguendo that the tape is potentially exculpatory, the defense has failed to show that the police acted in bad faith when it destroyed the 911 recording. Specifically, nothing in the record suggests that the police were aware of the exculpatory nature of the recording at the time of its destruction. On the contrary, Sergeant Crutchfield testified that the 911 call offered no information as to the identity of the cab driver or the cab company nor did it offer any information regarding the identity of the individual involved in the fare dispute. The defense has offered no evidence beyond mere supposition to refute this statement. There is no evidence whatsoever to suggest that the police had knowledge of the exculpatory nature of the recording at the time of its destruction. Therefore, Hill has failed to demonstrate bad faith by the police in destroying the 911 recordings or that his due process rights were violated.  We therefore conclude that the district court did not err in denying Hill's motion for a new trial.

III.

Hill claims that his sentence violates the mandate of *Booker* because the district court sentenced Hill under the erroneous belief that the federal sentencing guidelines were mandatory. Based on this error, Hill argues that he is entitled to have his sentence vacated and his case remanded to the district court for resentencing.  *See United States v. Barnett*, 398 F.3d 516, 526-530 (6th Cir. 2005) (noting that a defendant is generally entitled to resentencing by the district court where the defendant was originally sentenced by the district judge under the mistaken belief that the

federal sentencing guidelines were mandatory). The government agrees with Hill that in light of the Supreme Court's decision in *Booker* resentencing is warranted in this case. Given the parties's agreement that resentencing is appropriate and that such an outcome is consistent with our precedent, *see Barnett*, 398 F.3d at 526-30, we vacate Hill's sentencing and remand the case for resentencing consistent with the mandate of *Booker*.

IV.

For the reasons stated above, we conclude that Hill's constitutional rights were not violated and we AFFIRM the district court's denial of Hill's motion for a new trial. We VACATE Hill's sentence and REMAND the case for resentencing consistent with *Booker*.